[Docket No. 38]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

MARGUERITE MULVEY,

    Plaintiff,

v.

CITY OF ATLANTIC CITY,

    Defendant.

Civil No. 23-629 (RMB-MSJ)

**OPINION**

**RENÉE MARIE BUMB, Chief United States District Judge**

    Plaintiff Marguerite Mulvey ("Plaintiff") tripped and fell over raised screw on the Atlantic City Boardwalk. She sued the City of Atlantic City ("Defendant" or "City") to recover for the injuries she suffered. The City has moved for summary judgment arguing that New Jersey's Tort Claims Act immunizes it from liability. [Docket No. 38.][1] The Court agrees. No reasonable jury could find, as a matter of law, that the raised screw presented a dangerous condition. And even assuming that the raised screw was a dangerous condition, no reasonable jury could find, as a matter of law, that the City had actual or constructive notice of the screw or that the City's action or inaction to guard against the danger presented by the raised screw was palpably

---

[1] The City filed a corrected version of its brief in support of summary judgment that the Court considers instead of the brief attached to its initial motion. [Docket No. 40.]

unreasonable. Therefore, the Court will **GRANT** Defendant's Motion for Summary Judgment and **DISMISS** the Complaint.

I.   FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are straightforward and not in dispute.[2] Plaintiff Marguerite Mulvey and her husband were visiting Atlantic City in July 2021. [SOMF ¶ 9.] Walking the Boardwalk together one evening, somewhere between Maryland Avenue and States Avenue, Mrs. Mulvey tripped and fell over a raised screw protruding from the Boardwalk planks, fracturing her kneecap. [SOMF ¶¶ 1, 23.] Neither Mrs. Mulvey nor Mr. Mulvey noticed what Mrs. Mulvey tripped over. Indeed, Mrs. Mulvey testified that she never saw the screw she allegedly tripped over and Mr. Mulvey testified that, after Mrs. Mulvey fell, he did not look to discern what caused her to fall. [SOMF ¶¶ 27, 29.] It was another witness who pointed out a raised screw in the general area where Mrs. Mulvey fell. [SOMF ¶ 25.] The witness suggested that Mr. Mulvey take a picture of the raised screw, which he did, and which the Court shares below. [SOMF ¶¶ 15, 25; Docket No. 38-1.][3]

---

[2] Plaintiff admits all facts asserted in the City's Statement of Undisputed Material Fact ("SOMF"), [Docket No. 40-2], other than paragraph 41 asserting that the City "had no actual or constructive notice of the alleged dangerous condition at the location where the Plaintiff alleges her injuries arose." [Docket No. 41-9 ("Pl.'s Br.") at 3–4."]
[3] Neither Mrs. or Mr. Mulvey got the contact information of the witness and, so, never noticed him for a deposition or otherwise sought discovery from him. [SOMF ¶ 18.]

2



George Tittermary was the Superintendent of the Boardwalk during the relevant period. He testified that the City inspects the Boardwalk every weekday for "unsafe condition[s]" including "[h]igh screws" and "loose boards." [SOMF ¶ 36.] When the Boardwalk inspector finds a high or elevated screw, he will either "hit it down with a hammer," or "remove [the screw], re-drill the hole and re-screw it down." [SOMF ¶ 37.] If the inspector cannot get a raised screw to stay down, he will mark the area with a cone and notify a carpenter crew to take a look at the area. [*Id.*]

At the time of Mrs. Mulvey's fall, the Boardwalk inspector was Dennis McReynolds. [SOMF ¶ 35.][4] Superintendent Tittermary testified that, each day, McReynolds would drive the entire length of the Boardwalk to "get a good overview" of the Boardwalk's condition in addition to physically inspecting different half-mile to mile zones of the Boardwalk by foot to look for and repair any conditions that "appeared unsafe." [SOMF ¶ 36.] One day before Mrs. Mulvey's fall, McReynolds

---

[4] Plaintiff did not notice McReynolds for a deposition.

3

inspected "Zone 6" of the Boardwalk, which includes the block between Maryland Avenue and States Avenue where Mrs. Mulvey says she fell. He prepared an inspection report indicating on that day that he repaired ten high screws or nails between Maryland Avenue and States Avenue. [Docket No. 41-8 at 7.]

Plaintiff served the City with a notice of tort claim as required by the New Jersey Tort Claims Act ("TCA"), N.J.S.A. § 59:8-8, and filed this lawsuit alleging that the City negligently failed to "maintain the boardwalk in a safe and reasonable condition," including by "failing to inspect" the Boardwalk and "failing to repair" the raised screw, which constituted a dangerous condition. [Docket No. 1 (Complaint); *see also* Docket No. 41-1 (Notice of Claim).] The City now moves for summary judgment. It argues that Plaintiff has failed, as a matter of law, to establish that the raised screw presented a dangerous condition. [Docket No. 40-1.] And even if she could establish that the raised screw was a dangerous condition, the City argues, she cannot show that it had actual or constructive notice of the raised screw or that it acted in a "palpably unreasonable" manner. Plaintiff filed an opposition brief, and the City filed a reply brief in further support of summary judgment. [Docket Nos. 41–42.]

## II. LEGAL STANDARD

Summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if it will "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue is

4

"genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Id.* at 250.

When deciding the existence of a genuine issue of material fact, a court's role is not to weigh the evidence: all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Products Corp.*, 720 F.2d 303, 307 n.2 (3d Cir.1983). However, "the mere existence of a scintilla of evidence," without more, will not give rise to a genuine issue for trial. *Anderson*, 477 U.S. at 252. In the face of such evidence, summary judgment is still appropriate "[w]here the record … could not lead a rational trier of fact to find for the nonmoving party…." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "Summary judgment motions thus require judges to 'assess how one-sided evidence is, or what a "fair-minded" jury could "reasonably" decide.'" *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 265).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56(c)). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 250 (quoting FED. R. CIV. P. 56(e)). The non-movant's burden is rigorous: it "must point to concrete evidence in the record"; mere

allegations, conclusions, conjecture, and speculation will not defeat summary judgment. *Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995).

## III. ANALYSIS

Public entities, like Atlantic City, are presumptively immune from tort liability under the TCA. N.J.S.A. § 59:2-1(a); *see also Kahrar v. Borough of Wallington*, 171 N.J. 3, 791 A.2d 197, 201 (2002). "To strip a public entity of its immunity for tort liability under the TCA, the plaintiff must show: (1) the public entity's 'property was in dangerous condition at the time of injury,' (2) 'the injury was proximately caused by the dangerous condition,' (3) 'the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred,' and (4) either 'a negligent or wrongful act or omission of [a public] employee ... created the dangerous condition' or the 'public entity had actual or constructive notice of the dangerous condition[.]'" *Snead v. Bally's Casino*, 700 F. Supp. 3d 203, 214 (D.N.J. 2023) (quoting N.J.S.A. § 59:4-2) (alterations in original). "On top of that showing, a plaintiff must show that the public entity's conduct was 'palpably unreasonable.'" *Snead*, 700 F. Supp. at 214 (quoting *Stewart v. N.J. Tpk. Auth./Garden State Parkway*, 268 A.3d 346, 356 (N.J. 2022)). These elements of the TCA are "stringent" and a "heavy burden" rests on "plaintiffs seeking to establish public entity liability." *Charney v. City of Wildwood*, 732 F. Supp. 2d 448, 452–53 (D.N.J. 2010), *aff'd*, 435 F. App'x 72 (3d Cir. 2011).

A.  **Plaintiff Has Failed to Establish the Existence of a Dangerous Condition**

Under the TCA, a dangerous condition is defined as a "condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." *Trivisano v. City of Atl. City*, 2021 WL 6013572, at *5 (N.J. App. Div. Dec. 16, 2021) (quoting N.J.S.A. § 59:2-1(a)). "To pose a 'substantial risk of injury a condition of property cannot be minor, trivial, or insignificant. However, the defect cannot be viewed in a vacuum. Instead, it must be considered together with the anticipated use of the property.'" *Trivisano*, 2021 WL 6013572, at *5 (quoting *Atalese v. Long Beach Twp.*, 837 A.2d 1115, 1118 (N.J. App. Div. 2003)). Although the question of whether property is in a "dangerous condition" is usually a jury question, a court "may properly decide property is not in a dangerous condition where it determines that a reasonable factfinder could not find the property was in a dangerous condition." *Trivisano*, 2021 WL 6013572, at *5 (citation omitted).

Superintendent Tittermary testified that any screw "sticking up over about a quarter of an inch" presents a tripping hazard. [*See* Docket No. 38-9 at 7:15–17 (Deposition Transcript of Superintendent Tittermary)]; *Trivisano* 2021 WL 6013572, at *5 (summarizing deposition of Dennis McReynolds who testified as to the same). Plaintiff relies on one close-up photograph of the screw (taken by her husband) to establish that the screw was elevated above the Boardwalk and thus presented a dangerous condition. [*See* Docket No. 38-1.] Assuming that the screw in the

photograph is actually the instrumentality that caused Plaintiff's fall (there is no evidence that it is), the Court finds that Plaintiff has failed to establish a triable issue of fact regarding whether the raised screw was a dangerous condition.

Sure enough, the screw in the photograph appears to be raised to some degree. But courts "typically review *measurements* of gaps, cracks, or other surface defects to determine whether the condition of a walkway constitutes a dangerous condition under the TCA." *Snead*, 700 F. Supp. at 215 (citing *McCleary v. City of Wildwood*, 2011 WL 1630822, at *5 (D.N.J. Apr. 29, 2011) (emphasis added)). There is absolutely no factual or expert evidence in the record for a reasonable factfinder to determine whether the screw protruded high enough to meet the City's tripping hazard standard (*i.e.*, any screw raised higher than one-quarter of an inch) or any other standard.

Even if such evidence existed, the Court would still find that the raised screw did not constitute a dangerous condition. As discussed, courts must consider the dangerousness of a condition with the anticipated use of the Boardwalk. *See Atalese*, 837 A.2d at 1118. As the Appellate Division has held, "a single [raised] screw on [the Atlantic City] [B]oardwalk[,] [which] is four miles long, and sixty feet wide, does not permit a determination by a reasonable factfinder that the screw created a 'substantial risk of injury' to the anticipated users of the [B]oardwalk, including pedestrians such as [P]laintiff." 2021 WL 6013572, at *5 (holding that a single raised screw on Atlantic City Boardwalk did not create a substantial risk of injury). Thus, the Court finds, the raised screw at issue here "is the kind of minor defect that does not qualify as a dangerous condition under the [TCA]." *Charney*, 732 F. Supp. 2d at 456.

8

"[P]edestrians must expect some areas of imperfection on walkway surfaces, and not every defect in a walkway surface is actionable." *Id.*

### B. Plaintiff Has Failed to Establish that the City Had Actual or Constructive Notice of a Dangerous Condition

Even if Plaintiff could establish that the raised screw was a dangerous condition, she has not shown that the City had any notice of it. "To strip Atlantic City of its immunity under the TCA, [Plaintiff] must show the City had notice of the raised board either through actual or constructive notice." *Snead*, 700 F. Supp. at 218 (citing N.J.S.A. § 59:4-2). To establish actual notice, Plaintiff "must show Atlantic City 'had actual knowledge of the existence of the condition and knew or should have known of its dangerous character.'" *Id.* (quoting N.J.S.A. § 59:4-3(a)). "For constructive notice, [Plaintiff] must show that the dangerous condition 'existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character.'" *Id.* (quoting N.J.S.A. § 59:4-3(b)).

Plaintiff has presented no such evidence. There is no evidence in the record to establish that the City had actual notice of the raised screw before her fall, such as prior complaints, inspection logs, or witness observations. *Snead*, 700 F. Supp. at 218. And there is no evidence in the record demonstrating that would permit a reasonable factfinder to conclude that the screw was so "obvious[ly]" elevated for "such a period of time" that the City should have discovered it without actual notice.

9

Plaintiff argues that the City's general awareness of raised screws on the Boardwalk, and their potential safety risks, is sufficient to establish constructive notice of the specific screw at issue. [Pl.'s Br. at 7.] The Court disagrees. Constructive notice of a specific dangerous condition cannot be inferred from the "mere possibility" that dangerous conditions might *generally* exist on the Boardwalk. *See Danise v. Diversified Maint.*, 2023 WL 2263747, at *4 (D.N.J. Feb. 28, 2023) ("mere possibility" that "general [] conditions are such that a hazardous condition may materialize cannot raise an inference of constructive notice") (citing *Tameru v. W-Franklin, L.P.*, 350 F. App'x 737, 740 (3d Cir. 2009)); *Polzo v. Cnty. of Essex*, 196 N.J. 569, 581, 960 A.2d 375, 382 (2008) ("[T]he mere 'existence of an alleged dangerous condition is not constructive notice of it.'" (quoting *Sims v. City of Newark*, 581 A.2d 524 (N.J. Super. Ct. 1990)); *Norris v. Borough of Leonia*, 447, 734 A.2d 762, 773 (1999) ("Complaints … about a dangerous condition may serve to establish actual or constructive notice … of *that condition* …. but [such conditions] cannot serve as notice of a [dangerous condition] at a *different location*." (emphases in original)). Plaintiff needed to show that the City had actual or constructive notice of *the specific* screw she says she tripped over. She has not, and no reasonable jury could so infer. Thus, she has failed to establish the City's actual or constructive notice.

### C. Plaintiff Has Failed to Show that the City's Conduct was "Palpably Unreasonable"

Finally, even assuming that Plaintiff could both show that the screw was a dangerous condition, and that the City had actual or constructive notice of that

condition, she has failed to show that the City's "action or inaction" to protect against the condition was "palpably unreasonable." *Kolitch v. Lindedahl*, 497 A.2d 183, 187 (N.J. 1985). "To establish palpably unreasonable behavior, a plaintiff shoulders a 'steep burden' to prove 'more than ordinary negligence.'" *Snead*, 700 F. Supp. at 219 (quoting *Coyne v. State, Dep't of Transp.*, 867 A.2d 1159, 1166 (2005)). "The palpable unreasonableness inquiry requires courts to consider what the public entity 'did in the face of all of the attendant circumstances, including, of course, the extent of the known danger and what it considered to be the need for urgency." *Id*. (quoting *Schwartz v. Jordan*, 767 A.2d 1008, 1010 (N.J. App. Div. 2001)).

Plaintiff cannot carry that steep burden. There was nothing palpably unreasonable about the City's action or inaction with respect to raised Boardwalk screws. *See Snead* 700 F. Supp. at 220 (collecting cases refusing to find public entity liable for palpably unreasonable conduct where it maintained same or similar Boardwalk inspection procedures). Indeed, as in *Snead* where this Court considered the same exact Boardwalk inspection procedures at issue here, the City's Boardwalk inspection program is not unreasonable. "[T]he City employs Boardwalk inspectors who inspect the lengthy Boardwalk daily and for several hours to locate hazards" as well as "carpenters assigned to various sections of the Boardwalk to make repairs." 700 F. Supp. at 219; [*see also* SOMF ¶¶ 31–37 (describing the same inspection program).] Sometimes, those inspectors will miss things. But "[p]erfection [] is not required under the Tort Claims Act." *Charney*, 732 F. Supp. 2d at 458. "Imperfections in boardwalk surfaces are commonplace, and the failure of a public entity to remedy

11

every small defect in a boardwalk simply cannot be deemed palpably unreasonable," especially considering the City's "daily inspections of the [B]oardwalk" and its "repair[] [of] those defects it deem[s] sufficiently hazardous." *Id*.

In sum, Plaintiff has failed to create a triable issue of fact against the City because she has failed to establish the existence of a dangerous condition, that the City had any notice of such a dangerous condition, or that the City's action or inaction to protect against the condition was palpably unreasonable. Therefore, the City is entitled to summary judgment.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment will be **GRANTED** and the Complaint **DISMISSED WITH PREJUDICE**. An accompanying Order shall issue.

**February 28, 2025**　　　　　　　　　　　　**s/Renée Marie Bumb**
Date　　　　　　　　　　　　　　　　　　　　RENÉE MARIE BUMB
　　　　　　　　　　　　　　　　　　　　　　Chief United States District Judge